UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 14-6493 FMO (JEMx)** | Date | **July 14, 2016** |
|---|---|---|---|
| Title | **Manu Patolia v. Nutramed Holdings, Inc., <u>et</u> <u>al.</u>** | | |

| Present: The Honorable | Fernando M. Olguin, United States District Judge | |
|---|---|---|
| Julieta Lozano | None | None |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorney Present for Plaintiff(s): | | Attorney Present for Defendant(s): |
| None Present | | None Present |

**Proceedings:**     **(In Chambers) Order Re: Motion to Confirm Arbitration Award**

Having reviewed and considered all the briefing filed with respect to defendant Nutramed Holdings, Inc.'s ("defendant" or "NutraMed") Notice of Motion (Dkt. 50) and Motion for Confirmation of Arbitration Award and Entry of Judgment (Dkt. 50-1, "Motion to Confirm"), and plaintiff Manu Patolia's ("plaintiff" or "Patolia") Motion to Vacate Arbitration Award and/or in the Alternative Correcting the Award (Dkt. 58, "Motion to Vacate"), the court concludes that oral argument is not necessary to resolve the Motions.  <u>See</u> Fed. R. Civ. P. 78; Local Rule 7-15; <u>Willis v. Pac. Mar. Ass'n</u>, 244 F.3d 675, 684 n. 2 (9th Cir. 2001).

**<u>INTRODUCTION</u>**

On August 18, 2014, plaintiff filed his complaint seeking declaratory and injunctive relief in connection with the terms of a November 1, 2013, stock purchase agreement disputing NutraMed's "methodology" and "calculations" in calculating the net working capital amount under the terms of that agreement. (<u>See</u> Dkt. 1-1, Complaint at ¶¶ 1, 16-18, 25 & 29).  NutraMed moved to compel arbitration and stay the action, which the court granted. (<u>See</u> Dkt. 49, Court's Order of May 13, 2015).

On December 14, 2015, the arbitrator issued its final arbitration award in favor of NutraMed. (<u>See</u> Dkt. 50-1, Motion to Confirm at 2).  On January 14, 2016, NutraMed filed its motion to confirm that arbitration award.  (<u>See</u> <u>id.</u>).  Patolia opposed the Motion to Confirm (<u>see</u> Dkt. 57, Manu Patolia's Opposition to Motion to Confirm Arbitration Award ("Opp. to Motion to Confirm")), and separately filed his own motion to vacate, modify, or correct the arbitration award.  (<u>See</u> Dkt. 58, Motion to Vacate).

As Patolia's Opposition to the Motion to Confirm is largely identical to his Motion to Vacate, (<u>compare</u> Dkt. 57, Opp. to Motion to Confirm <u>with</u> Dkt. 58, Motion to Vacate), Patolia sought to have NutraMed's Motion to Confirm and Patolia's Motion to Vacate heard on the same day, February 25, 2016. (<u>See</u> Dkt. 65, Plaintiff's <u>Ex Parte</u> Application for Alternative Relief).  The court granted Patolia's <u>ex parte</u> application, (<u>see</u> Dkt. 67, Court's Order of February 22, 2016), which deemed NutraMed's reply to the Motion to Confirm (Dkt. 64, NutraMed Holdings, Inc.'s Reply in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 14-6493 FMO (JEMx)** | Date | **July 14, 2016** |
|---|---|---|---|
| Title | **Manu Patolia v. Nutramed Holdings, Inc., <u>et</u> <u>al.</u>** | | |

Support of Motion for Confirmation of Arbitration Award and Entry of Judgment ("Reply re Motion to Confirm")) as also its opposition to Patolia's Motion to Vacate. (<u>See</u> Dkt. 67, Court's Order of February 22, 2016). The court also gave Patolia leave to file his reply to his Motion to Vacate. (<u>See</u> <u>id.</u>; Dkt. 65-1, Reply Memorandum in Support of Motion to Vacate Arbitration Award and/or in the Alternative Correcting the Award ("Reply re Motion to Vacate")).

**<u>BACKGROUND</u>**[1]

I.    ARBITRATION CLAUSE IN THE PURCHASE AGREEMENT.

Patolia and his affiliates sold, and NutraMed purchased, 100% of the stock of NutraMed, Inc. ("company") pursuant to the terms of a November 1, 2013, stock purchase agreement. (Dkt. 60-6, Declaration of Sabina Helton (1) in Support of Patolia's Motion to Vacate Arbitration Award and (2) in Opposition to Defendant's Motion to Confirm Arbitration Award ("Helton Decl.") at Exhibit ("Exh.") 2 ("SPA")). Section 1.4 of the SPA included a procedure for truing-up the purchase price based upon a target net working capital amount[2] of $3,436,000 on the day before the closing, or October 31, 2013. (<u>See</u> <u>id.</u> at §§ 1.4(a)-(b)). In other words, if the company's actual net working capital amount on the day before the closing was below $3,436,000, then Patolia owes NutraMed the difference. If the company's actual net working capital amount on the day before the closing is above $3,436,000, then NutraMed owes Patolia the difference.

Based on their true-ups, NutraMed contended that Patolia owed it approximately $1.04 million to $1.11 million, (<u>see</u> Dkt. 57, Opp. to Motion to Confirm at 4; Dkt. 64, Reply re Motion to Confirm at 3; Dkt. 58, Motion to Vacate at 4), while Patolia's calculations showed that NutraMed owed him approximately $1.04 million. (<u>See</u> Dkt. 64, Reply re Motion to Confirm at 3).

If the parties could not agree on the actual net working capital amount, § 1.4(a) of the SPA included an arbitration provision:

> If the Stockholder Representative[, Patolia,] disputes any of the calculations in the Closing Date Balance Sheet or the Net Working Capital Amount, Buyer[, Nutramed,] and the Stockholder Representative shall use commercially reasonable efforts to reconcile such disputes and reach agreement on a Closing Date Balance Sheet and Net Working Capital

---

[1]  The background set forth in this Order is relevant to the pending motions. The court has laid out the factual background of this case in detail in its prior orders.

[2]  Net Working Capital = Current Assets - Current Liabilities. This is a liquidity calculation used to measure whether a company has enough short term assets to cover its short term debt. The net working capital can be determined from the company's balance sheet, which provides the company's total assets and total liabilities.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 14-6493 FMO (JEMx)** | Date | **July 14, 2016** |
|---|---|---|---|
| Title | **Manu Patolia v. Nutramed Holdings, Inc., et al.** | | |

Amount.  In the event Buyer and Stockholder Representative are unable to reach agreement on a Closing Date Balance Sheet within thirty (30) days following the Stockholder Representative's delivery of the dispute notice, then Buyer and the Stockholder Representative shall submit the remaining issues in dispute to a nationally-recognized accounting firm mutually agreeable to Buyer and the Stockholder Representative (the "Selected Accountants"), which firm shall resolve such dispute within thirty (30) days following its selection.

(Dkt. 60-6, SPA at § 1.4(a)) (emphasis omitted).  "The determination of the Closing Date Balance Sheet and Net Working Capital Amount by the Selected Accountants shall be final, binding and conclusive upon the Parties."  (Id.).

II.    ENGAGEMENT LETTER.

Following the court's order granting NutraMed's motion to compel arbitration, (see Dkt. 49, Court's Order of May 13, 2015), the parties mutually selected KPMG LLP ("arbitrator" or "KPMG") as its arbitrator.  (See Dkt. 60-2, Helton Decl. at Exh. 1 ("Engagement Letter") at 0002) (confirming mutually acceptable engagement of KPMG).  The Engagement Letter confirmed that the scope of the engagement was to "resolve the Parties' remaining issues in dispute on the Closing Date Balance Sheet and the Net Working Capital Amount of the Company as of October 31, 2013." (Id.; see id. at 0009 ("KPMG will issue a written report addressed to both Parties that will state the dollar amount to be awarded with respect to each disputed item[.]")).  The Engagement Letter also stated that, in making its determinations as to the remaining issues in dispute, KPMG "will not state the basis for determining the amounts awarded."  (Id. at 0009).  Finally, the Engagement Letter stated that "[t]he determination of the Closing Date Balance Sheet and Net Working Capital Amount by the Selected Accountants shall be final, binding and conclusive among the Parties." (Id. at 0002-03).

The Engagement Letter also provided a time line that superseded the one set forth in the SPA, which included deadlines for: (1) making document requests; (2) resolving disputes regarding the production of documents, including a briefing schedule and issuance of a written order; (3) briefing regarding the parties' disputes on the remaining disputed items; (4) holding an oral hearing; (5) and issuing a tentative date for the arbitrator's final award.[3]  (See Dkt. 60-2, Engagement Letter at 0004-05).  The Engagement Letter further provided that "Either Party may, within five business days of the rendering of [KPMG's] Determination, call to the Selected Accountants' attention any patent arithmetic inaccuracy in the Determination."  (Id. at 0005).

---

[3] The Engagement Letter included the caveat that KPMG would "use [its] reasonable best efforts to comply with the timetable set forth above.  However, [it] can provide no assurance that [it] will be able to do so due to the uncertainties inherent in resolving disputes."  (Dkt. 60-2, Engagement Letter at 0006).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 14-6493 FMO (JEMx)** | Date | **July 14, 2016** |
|---|---|---|---|
| Title | **Manu Patolia v. Nutramed Holdings, Inc., et al.** | | |

III.    ARBITRATION PROCEEDINGS.

The parties engaged in arbitration proceedings between June 1, 2015, and December 31, 2015.  (See Dkt. 60-2, Engagement Letter (dated June 1, 2015); Dkt. 60-25, Helton Decl. at Exh. 14 (E-mail dated December 31, 2015)).  The arbitration proceedings included the exchange of documents and a five-hour oral hearing before KPMG in New York City.  (See Dkt. 64, Reply re Motion to Confirm at 5).

On December 14, 2015, the arbitrator issued its arbitration award on the remaining disputed items.  (Dkt. 60-22, Helton Decl. at Exh. 11 ("Final Award")).  The arbitrator rendered an award of $3,546,674 in favor of NutraMed and $360,594 in favor of Patolia.  (See id. at 0949).  By inputting the disputed amounts awarded by the arbitrator to the company's balance sheet (which included undisputed amounts), NutraMed calculated the company's net working capital amount and concluded that Patolia owes it $811,753 to true-up the purchase price under the SPA.  (Compare id. at 0950-57 with Dkt. 60-26, Helton Decl., Exh. 15 at 1014 and Dkt. 60-2, SPA at § 1.4(a)-(b)).

On December 21, 2015, Patolia disputed portions of the arbitration award on the ground that it contained "patent arithmetic inaccurac[ies]," (see Dkt. 60-2, Engagement Letter at 0005), including a check for $68,782 towards the payment of a Porsche, the balance of a Pacific Premier bank account, and other amounts.  (See Dkt. 60-23, Helton Decl., Exh. 12 at 0959-60 (Patolia's December 21, 2015 Letter)).  NutraMed disputed these contentions.  (See Dkt. 60-24, Helton Decl., Exh. 13 at 1004 (NutraMed's December 22, 2015 Letter)) ("The arguments advanced in [Patolia's December 21, 2015 Letter] are variously new, substantive, unsubstantiated, related to periods following the balance sheet date, and, as stated, in all cases not patent arithmetic inaccuracies.").  After "weigh[ing] all the information in the aforementioned correspondence," the arbitrator "determined that no adjustments to the Determination are to be made[.]"  (Dkt. 60-25, Helton Decl., Exh. 14 at 1009 (KPMG's December 31, 2015 E-mail)).

**LEGAL STANDARD**

"The Federal Arbitration Act ['FAA'] gives federal courts only limited authority to review arbitration decisions, because broad judicial review would diminish the benefits of arbitration."  In re Sussex, 781 F.3d 1065, 1072 (9th Cir. 2015) (internal citation and quotation marks omitted).  The FAA permits a district court to vacate an arbitration award "only in very unusual circumstances."  First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 942, 115 S.Ct. 1920, 1923 (1995); see In re Sussex, 781 F.3d at 1072 ("The [Supreme] Court has . . . made clear that motions to vacate will be granted only in very unusual circumstances to prevent arbitration from becoming merely a prelude to a more cumbersome time-consuming judicial review process.") (internal citation and quotation marks omitted).

A court must grant a request to affirm an arbitration award unless the award is vacated, modified or corrected.  See 9 U.S.C. § 9; Hall St. Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 582, 128 S.Ct. 1396, 1402 (2008) ("Under the terms of § 9 [of the FAA], a court 'must' confirm an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 14-6493 FMO (JEMx)** | Date | **July 14, 2016** |
|---|---|---|---|
| Title | **Manu Patolia v. Nutramed Holdings, Inc., et al.** | | |

arbitration award 'unless' it is vacated, modified, or corrected 'as prescribed' in §§ 10 and 11."). Sections "10 and 11 respectively provide the FAA's exclusive grounds for expedited vacatur and modification." Id. at 584, 128 S.Ct. at 1403.  Under § 10, a court may vacate an arbitration award where: (1) the award was procured by corruption, fraud or undue means; (2) there was evident partiality of corruption in the arbitrator; (3) the arbitrator was guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown, or in refusing to hear evidence pertinent to and material to the controversy, or of any other misbehavior through which a party's rights have been prejudiced; or (4) the arbitrator exceeded his or her powers or imperfectly executed them.  See 9 U.S.C. § 10(a).  A court may modify an arbitration award where: (1) there was a material miscalculation; (2) the arbitrator awarded upon a matter not submitted to him or her; or (3) the award is imperfect in a matter of form not affecting the merits of the controversy.  See 9 U.S.C. § 11.  In short, "when reviewing the award of an arbitrator chosen by the parties to [an] agreement, [the court is] bound – under all except the most limited circumstances – to defer to the decision of another, even if [the court] believe[s] that the decision finds the facts and states the law erroneously."  Stead Motors of Walnut Creek v. Auto. Machinists Lodge No. 1173, Int'l Ass'n of Machinists & Aerospace Workers, 886 F.2d 1200, 1204 (9th Cir. 1989) (en banc); see id. at 1204-05 ("[C]ases like this one, which acquire the plenary attention of our court, provide an opportunity to repeat and reemphasize the unique character of an arbitrator's function and the nearly unparalleled degree of deference we afford his decisions."); Baravati v. Josephthal, Lyon & Ross, Inc., 28 F.3d 704, 706 (7th Cir. 1994) ("Judicial review of arbitration awards is tightly limited; perhaps it ought not be called 'review' at all.").

**DISCUSSION**

I.      VACATING THE ARBITRATION AWARD FOR INCOMPLETENESS.

        Under the FAA, the court may vacate an arbitration award where the arbitrator "so imperfectly executed [his powers] that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10(a)(4).  "[T]he purpose of the section is merely to render unenforceable an arbitration award that is either incomplete in the sense that the arbitrators did not complete their assignment (though they thought they had) or so badly drafted that the party against whom the award runs doesn't know how to comply with it."  New United Motor Mfg., Inc. v. United Auto Workers Local 2244, 617 F.Supp.2d 948, 957 (N.D. Cal. 2008) (quoting Smart v. Int'l Bhd. of Elec. Workers, Local 702, 315 F.3d 721, 725 (7th Cir. 2002)).  "[T]he question for the district court [is] . . . whether the award itself, in the sense of judgment, order, bottom line, is incomplete in the sense of having left unresolved a portion of the parties' dispute."  IDS Life Ins. Co. v. Royal All. Assocs., Inc., 266 F.3d 645, 651 (7th Cir. 2001).

        Patolia contends that the arbitration award should be vacated because the arbitrator did not determine the closing balance sheet and net working capital amount as required by the terms of the SPA and Engagement Letter.  (See Dkt. 57, Opp. to Motion to Confirm at 11-14; Dkt. 58, Motion to Vacate at 11-14; Dkt. 65-1, Reply re Motion to Vacate at 2-4).  Plaintiff's contention is unpersuasive.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 14-6493 FMO (JEMx)** | Date | **July 14, 2016** |
|---|---|---|---|
| Title | **Manu Patolia v. Nutramed Holdings, Inc., et al.** | | |

Pursuant to the Engagement Letter, KPMG was directed to "resolve the Parties' remaining issues in dispute on the Closing Date Balance Sheet and the Net Working Capital Amount of the Company as of October 31, 2013." (Dkt. 60-2, Engagement Letter at 0002). KPMG was required to "issue a written report addressed to both Parties that will state the dollar amount to be awarded with respect to each disputed item." (Id. at 0008). Contrary to Patolia's assertion, (see Dkt. 65-1, Reply re Motion to Vacate at 2-4), KPMG was not required, as part of the arbitration award, to recreate the company's balance sheet and net working capital amount by inputting the parties' disputed and undisputed line item amounts into one document.[4] (See, generally, Dkt. 60-2, Engagement Letter).

Also, it cannot be said, and Patolia does not contend, that the arbitration award is so "badly drafted that the party against whom the award runs doesn't know how to comply with it." New United Motor Mfg., 617 F.Supp.2d at 957. By inputting the amounts awarded by the arbitrator to the company's balance sheet, NutraMed calculated the company's actual net working capital amount and concluded that Patolia owes it $811,753 to true-up the purchase price under the SPA. (Compare id. at 0950-57 with Dkt. 60-26, Helton Decl, Exh. 15 at 1014 and Dkt. 60-2, SPA at § 1.4(a)-(b)). Indeed, Patolia does not dispute how NutraMed arrived at the $811,753 figure. (See, generally, Dkt. 57, Opp. to Motion to Confirm; Dkt. 58, Motion to Vacate; Dkt. 65-1, Reply re Motion to Vacate).

II.    VACATING THE ARBITRATION AWARD FOR MANIFEST DISREGARD OF THE LAW.

Under the FAA, the court may vacate an arbitration award "where the arbitrators exceeded their powers[.]" 9 U.S.C. § 10(a)(4). "[T]he manifest disregard ground for vacatur is shorthand for a statutory ground under the FAA, specifically 9 U.S.C. § 10(a)(4), which states that the court may vacate 'where the arbitrators exceeded their powers.'" Comedy Club, Inc. v. Improv W. Assocs., 553 F.3d 1277, 1290 (9th Cir. 2009). "[F]or an arbitrator's award to be in manifest disregard of the law, it must be clear from the record that the arbitrator recognized the applicable law and then ignored it." Id. (internal quotation and alteration marks omitted). Moreover, "to rise to the level of manifest disregard[,] the governing law alleged to have been ignored by the arbitrators must be well defined, explicit, and clearly applicable." Collins v. D.R. Horton, Inc., 505 F.3d 874, 879 (9th Cir. 2007) (emphasis in original) (internal quotation and alteration marks omitted).

Patolia reiterates his argument that the arbitration award should be vacated because the arbitrator did not determine the closing balance sheet and net working capital amount. (See Dkt. 57, Opp. to Motion to Confirm at 14-15; Dkt. 58, Motion to Vacate at 14-15). However, plaintiff

---

[4] The court is similarly unpersuaded by Patolia's contention that the arbitrator issued its award in an untimely manner. (See Dkt. 57, Opp. to Motion to Confirm at 13-14; Dkt. 58, Motion to Vacate at 13-14). The Engagement Letter provided a "Tentative date for Determination," not a firm date. (Dkt. 60-2, Engagement Letter at 0005). And KPMG further advised the parties that it could not provide assurances that it would strictly comply with the time line. (See id. at 0006).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 14-6493 FMO (JEMx)** | Date | **July 14, 2016** |
|---|---|---|---|
| Title | **Manu Patolia v. Nutramed Holdings, Inc., <u>et</u> <u>al.</u>** | | |

does not identify any "well defined, explicit, and clearly applicable" law that the arbitrator disregarded, intentionally or otherwise.  (<u>See</u>, <u>generally</u>, Dkt. 57, Opp. to Motion to Confirm; Dkt. 58, Motion to Vacate; Dkt. 65-1, Reply re Motion to Vacate); <u>see</u> <u>Collins</u>, 505 F.3d at 879 (emphasis omitted).

Patolia also contends that the arbitrator exceeded its powers by determining only the disputed line items in the company's balance sheet and net working capital amount.  (<u>See</u> Dkt. 65-1, Reply re Motion to Vacate at 4-6).  However, the arbitrator did not exceed its powers;   rather, it simply completed the tasks the parties asked it to accomplish, <u>i.e.</u>, "resolve the Parties' remaining issues in dispute on the Closing Date Balance Sheet and the Net Working Capital Amount of the Company as of October 31, 2013," (Dkt. 60-2, Engagement Letter at 0002), and "issue a written report addressed to both Parties that will state the dollar amount to be awarded with respect to each disputed item."  (<u>Id.</u> at 0008).

In short, the arbitrator's rulings, even if erroneous, did not "exceed his powers" or rise to the level of manifest disregard of the law.  <u>See</u> <u>Biller v. Toyota Motor Corp.</u>, 668 F.3d 655, 665 (9th Cir. 2012) ("[A]rbitrators exceed their powers . . . not when they merely interpret or apply the governing law incorrectly, but when the award is completely irrational[.]"); <u>Collins</u>, 505 F.3d at 879 ("The manifest disregard exception requires something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand and apply the law.") (internal quotation marks omitted).

III.    MODIFYING OR CORRECTING THE ARBITRATION AWARD.

Patolia contends that the court should modify or correct the arbitration award because of "obvious error[s]," including, among other things, the arbitrator's failure to correct its calculations regarding the Porsche check, the Pacific Premier Account, and other post-closing payments.  (<u>See</u> Dkt. 57, Opp. to Motion to Confirm at 15-16; Dkt. 58, Motion to Vacate at 15-16).

Under 9 U.S.C. § 11(a), the court may correct or modify an arbitration award "[w]here there was an evident material miscalculation of figures."  This ground "afford[s] an extremely limited review authority, a limitation that is designed to preserve due process but not to permit unnecessary public intrusion into private arbitration procedures."  <u>Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.</u>, 341 F.3d 987, 997-98 (9th Cir. 2003).  In other words, the court may modify or correct an arbitration award to the extent it contains a "technical error," <u>id.</u> at 997, "within the four corners of the award itself."  <u>G.C. & K.B. Invs., Inc. v. Wilson</u>, 326 F.3d 1096, 1106 (9th Cir. 2003).

Here, Patolia has not identified any technical error within the four corners of the arbitration award.  (<u>See</u>, <u>generally</u>, Dkt. 57, Opp. to Motion to Confirm; Dkt. 58, Motion to Vacate; Dkt. 65-1, Reply re Motion to Vacate).  Rather, Patolia asks the court to re-weigh evidence – evidence that the arbitrator considered – regarding the Porsche check, Pacific Premier Account, and other payments.  (<u>See</u> Dkt. 60-25, Helton Decl. at Exh. 14 at 1009 (KPMG's December 31, 2015 E-mail)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 14-6493 FMO (JEMx)** | Date | **July 14, 2016** |
|---|---|---|---|
| Title | **Manu Patolia v. Nutramed Holdings, Inc., <u>et</u> <u>al.</u>** | | |

(after "weigh[ing] all the information in the aforementioned correspondence[,]" the arbitrator "determined that no adjustments to the Determination are to be made[.]"); Dkt. 60-23, Helton Decl., Exh. 12 at 0959-60 (Patolia's December 21, 2015 Letter); Dkt. 60-24, Helton Decl., Exh. 13 at 1004 (NutraMed's December 22, 2015 Letter) ("The arguments advanced in [Patolia's December 21, 2015 Letter] are variously new, substantive, unsubstantiated, related to periods following the balance sheet date, and, as stated, in all cases not patent arithmetic inaccuracies.")).  Under the circumstances, the court declines to modify or correct the arbitration award.  See <u>Lagstein v. Certain Underwriters at Lloyd's, London</u>, 607 F.3d 634, 640 (9th Cir. 2010) (holding that a district court may not modify or correct an arbitration award when the "heart of such disagreement concerns the panel's weighing of the evidence").

**<u>CONCLUSION</u>**

**This Order is not intended for publication.  Nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

Based on the foregoing, IT IS ORDERED THAT:

1.  Plaintiff Manu Patolia's Motion to Vacate Arbitration Award and/or in the Alternative Correcting the Award **(Document No. 58)** is **denied**.

2.  Defendant Nutramed Holdings, Inc.'s Motion for Confirmation of Arbitration Award and Entry of Judgment **(Document No. 50)** is **granted**.

3.  Judgment shall be entered accordingly.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | jloz | |